IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VITO R., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   24-cv-6287 |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                        May 19, 2025

Plaintiff Vito R. brought this action seeking review of the Commissioner of Social Security Administration's (SSA) decision denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f (the "Act"). This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 8) is **DENIED**.

### I.      PROCEDURAL HISTORY

Plaintiff filed for SSI, alleging disability since May 1, 2015, due to heart issues/3 heart attacks, shortness of breath, memory issues, and heart functioning below 50%. (R. 200, 216). Plaintiff's application was denied at the initial level and upon reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ). (R. 110-19, 125-32, 197-99). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the November 30, 2023 administrative hearing. (R. 35-62). On January 22, 2024, the ALJ issued a decision unfavorable to Plaintiff. (R. 14-34). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on September 26, 2024, thus making the ALJ's decision the final

decision of the Commissioner for purposes of judicial review. (R. 1-6).

On November 25, 2024, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (Compl., ECF No. 1). Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) the following day. (Consent, ECF No. 4). On March 6, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 8). The Commissioner filed a response on April 7, 2025. (Resp., ECF No. 9). Plaintiff filed a reply on April 15, 2025. (Reply, ECF No. 10).

## II.    FACTUAL BACKGROUND[1]

At the hearing, the VE testified that an individual with Plaintiff's residual functional capacity (RFC), as set forth below (i.e., including a limitation to understanding, remembering, and carrying out simple instructions and decisions with occasional workplace changes), could perform the following three jobs available in the national economy at the following numbers, each a with specific vocational preparation (SVP)[2] level of two according to the Dictionary of Occupational Titles (DOT): (1) food and beverage order clerk (DOT 209.567-014), 40,000 positions; (2) eyeglass polisher (DOT 713.684-038), 20,000 positions; and (3) dowel inspector (DOT 669.687-014), 5,000 positions. (R. 57). She stated that her testimony was consistent with the DOT, except as to certain topics it did not address (such as some postural maneuvers,

---

[1] Because Plaintiff's request for review implicates only the VE's administrative hearing testimony rather than the underlying record, the Court confines its factual summary to that testimony.

[2] SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App'x C – Components of the Definition Trailer (4th ed. rev. 1991), 1991 WL 688702 (Jan. 1, 2016). An SVP of two requires "[a]nything beyond short demonstration up to and including 1 month." *Id.*

crowds, absenteeism and being "off-task"), in which case her testimony was based upon her professional experience. (*Id.*). Plaintiff's counsel examined the VE regarding whether the job numbers cited were specific to the individual DOT sections given (which she confirmed), as well as about several other issues, but she did not otherwise suggest any conflict between the VE's testimony and the DOT. (R. 59-61).

### III. ALJ'S DECISION

Following the administrative hearing held on January 31, 2024, the ALJ issued a decision in which he made the following findings:

1. The claimant has not engaged in substantial gainful activity since April 8, 2022, the application date (20 C.F.R. 416.971 *et seq.*).

2. The claimant has the following severe impairments: coronary artery disease; status post myocardial infarction in 2011; status post myocardial infarction 2018; status post coronary stents placement; hypertension; hyperlipidemia; obesity; depression; and anxiety (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; never crawl; frequently reach, handle finger, feel, and push/pull; occasionally operate foot controls; only occasional exposure to extreme cold,

3

|   |   |
|---|---|
|   | extreme heat, and dusts, odors, fumes, and pulmonary irritants; is able to understand, remember, and carry out simple instructions and decisions with occasional workplace changes; can have frequent interaction with the public, coworkers, and supervisors; can have no high stress work, which is defined as having production quotas or an assembly line pace; can have no work with very loud noise defined as heavy traffic; and can only work with no crowds of 10 or more people. |
| 5. | The claimant is unable to perform any past relevant work (20 CFR 416.965). |
| 6. | The claimant was born on May 18, 1979, and was 42 years old, which is defined as a younger age 18-44, on the date the application was filed (20 CFR 416.963). |
| 7. | The claimant has at least a high school education (20 CFR 416.964). |
| 8. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 9. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). |
| 10. | The claimant has not been under a disability, as defined in the Social Security Act, from May 11, 2021, through the date of this decision (20 CFR 404.1520(g)). |

(R. 17-30).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 30).

## IV.   LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.1920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.  DISCUSSION

In his request for review, Plaintiff claims[3] that "remand is required because the ALJ failed to resolve a reasoning level conflict between the vocational expert's testimony and the DOT."[4] (Pl.'s Br., ECF No. 8, at 2-10). However, the threshold issue is whether this claim is even properly before this Court. Accordingly, the Court considers this question below.

### A.  The Parties' Positions

In his response, the Commissioner asserts that Plaintiff's counsel's failure at the administrative hearing to challenge the VE's testimony regarding the positions he could perform on the basis of its alleged conflict with the positions' DOT definitions renders the instant attempt to do so untimely. (Resp., ECF No. 9, at 4 (citing *Christopher F. v. Kijakazi*, No. 1:21-CV-516, 2022 WL 9169835, at *17 (D.N.J. Oct. 14, 2022))). Plaintiff replies that this "hyper-technical

---

[3] Plaintiff also raises a second, related but separate claim that the Commissioner cannot invoke SSA Emergency Message 21065 to support the ALJ's decision, but in his response he disavows any intention to do so. (Resp., ECF No. 9, at 7). For this reason, as well as the Court's conclusion herein that Petitioner has forfeited his underlying claim, the Court does not further consider this related claim.

[4] Specifically, he argues that an unresolved conflict existed between his limitation to tasks involving simple instructions and the DOT's assessment that order clerk requires a reasoning level of three, which Plaintiff maintains requires the ability to carry out detailed instructions. (Reply, ECF No. 8, at 6 (citing DOT, App'x C, 1991 WL 688702)). He adds the position of polisher, with its level two reasoning level according to the DOT, is also inconsistent with a limitation to simple instructions. (*Id.* at 7 (citing DOT 713.684-038)).

'waiver' defense" is unavailing because waiver requires that a party affirmatively relinquish a right, which he has not done.  (Reply, ECF No. 10, at 6 (citation omitted)).  Instead, Plaintiff maintains that "[a]t most" he might have forfeited the issue, but the Commissioner has not "offer[ed] the affirmative defense of forfeiture," thus himself "forfeit[ing] any forfeiture defense."  (*Id.*).

Next, he "emphasize[s] strongly" that the applicable regulations and underlying statute contain no "exhaustion requirement," despite the SSA having had the opportunity to promulgate one.  (*Id.* at 6-7 (citing *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2012); *Sims v. Apfel*, 530 U.S. 103, 109 (O'Connor, J., concurring); *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 153 (3d Cir. 2010))).  He thus accuses the Commissioner of requesting that this Court "make up" or "judicially manufactur[e] a forfeiture rule . . . ."  (*Id.* at 7).  However, he adds that the application of such a rule would require the Commissioner to explain how it comports with *McCarthy v. Madigan*, 503 U.S. 140 (1992), which requires courts imposing a new exhaustion requirement to assess the nature of the claim, the characteristics of the specific administrative procedure provided and the proper balance between the individual's interest in maintaining prompt access to federal review and the countervailing institutional interests favoring exhaustion.  (*Id.* (citing *Cirko*, 948 F.3d at 153)).

Further, Plaintiff insists that any exhaustion or forfeiture rule would not apply here because the record contains no written notice of one.  (*Id.*).  He contrasts this scenario with the many "5-day rule" notices in the record and contends that Justice O'Connor's "controlling concurrence"[5] in *Sims* clearly requires the SSA to affirmatively notify claimants of an issue

---

[5] In *Sims*, Justice O'Connor's concurrence provided the tiebreaking vote necessary to remand the claimant's social security appeal.  *See generally* 530 U.S. 103.  As Plaintiff suggests, subsequent Court decisions continued to rely on her concurrence, in conjunction with the

exhaustion rule. (*Id.* (citation omitted)). He also highlights that pursuant to the SSA's regulations and rulings the administrative hearing is "informal" and suggests that the ALJ's statements to that effect at the start of the proceeding "misled" him into assuming there was no "unannounced forfeiture rule," which he "could not have known anything about" until receiving the ALJ's written decision months after the hearing. (*Id.* at 8 (citing R. 40; *Sims*, 530 U.S. at 114; *Bistek*, 139 S. Ct. 1151-52; 20 C.F.R. § 416.1400(b); SSR 13-1p, 2013 WL 633939, at *3)). Lastly, he summarizes that the Commissioner's forfeiture defense improperly shifts the step five burden from the SSA to Plaintiff. (*Id.*).

   **B.**   **Analysis**

Notwithstanding Plaintiff's argument to the contrary, the Commissioner opposes relief on forfeiture, not waiver, grounds. Although at the outset of the "Argument" section of the Commissioner's response he footnoted that "[a]ny arguments not raised in Plaintiff's initial brief are waived," it is clear from the face of this statement that he was referring to potential waiver due to the failure to brief arguments before this Court, not forfeiture based on the failure to raise issues at the administrative hearing. (*See* Resp., ECF No. 8, at 3 n.2 (citing *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening *brief* constitutes waiver of that issue on appeal.") (emphasis added); *Aiellos v. Zisa*, No. 09-3076, 2009 WL 3486301, at *1 (D.N.J. Oct. 20, 2009) ("It is hornbook law that arguments raised for the first time in a reply *brief* are waived[.]") (emphasis added))). Indeed, when addressing Plaintiff's failure to object at the hearing to the VE's testimony given therein, the Commissioner stated that the attempt to do so now upon judicial review was "too late," consistent with Plaintiff's own description of forfeiture. (*Compare* Resp.,

---

plurality opinion authored by Justice Thomas. *See Carr*, 593 U.S. at 89-91.

ECF No. 9, at 4, *with* Reply, ECF No. 10, at 6 ("'forfeiture' involves a failure to timely assert a right")).[6] Accordingly, Plaintiff's suggestion that the Commissioner "forfeited any forfeiture defense" is not well-taken. (*See* Reply, ECF No. 10, at 6).

Turning to the merits of this defense, the Court observes that nowhere does Plaintiff dispute that his counsel failed to object at the administrative hearing to the VE's testimony allegedly conflicting with the DOT. (*See generally* Pl.'s Br., ECF No.8; Reply, ECF No. 10; *see also* R. 59-61). Nor does he even acknowledge the Commissioner's cited case finding that the failure to challenge a VE's testimony during the hearing results in the forfeiture of that challenge upon judicial review, or the many cases holding likewise. *See Christopher F.*, 2022 WL 9169835, at *17 ("Plaintiff's counsel never objected or challenged the vocational expert's testimony in this regard at the administrative hearing. Plaintiff's current attempt to raise these challenges therefore comes too late and will not serve as a basis to remand this matter."); *see also Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (the claimant "forfeited this argument [regarding a conflict in the VE's testimony] by failing to object . . . during the hearing"); *Dionisio R. v. Comm'r of Soc. Sec.*, No. 23-22067, 2025 WL 428557, at *5 (D.N.J. Feb. 7, 2025) ("Plaintiff did not object to the vocational expert's testimony on this basis at the administrative hearing, and thus his present challenge is untimely."); *Tonti*, 2021 WL 518178, at *3; *Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020)

---

[6] Moreover, even if the Commissioner had characterized the concept at issue here as "waiver" rather than "forfeiture," this Court would be reluctant to accept Plaintiff's semantics-based argument because courts addressing the effects of a claimant's failure to object at the hearing to VE testimony sometimes use the terms interchangeably. *See, e.g., Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony.").

9

("Brown's counsel did not object to . . . the VE's . . . testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony."); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (affirming ALJ decision where claimant failed to raise alleged conflict between VE testimony and DOT during the hearing) (citation omitted).

Instead, he repeatedly claims that this Court cannot simply "judicially manufactur[e]" an exhaustion rule. (Reply, ECF No. 10, at 7). Similarly, he posits that if this Court were "to create such a rule" it would have to assess the three factors set forth in *McCarthy* and repeated in *Cirko*. (Reply, ECF No. 10, at 7 (citations omitted)). But his contention that in requiring exhaustion the Court would be breaking new ground disregards the above-cited cases and "numerous [other] cases [that] make clear [that] '[w]hen no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion.'" *King v. Colvin*, No. 3:14-CV-1515, 2016 WL 890607, at *10 (N.D. Ind. Mar. 9, 2016) (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); citing *Liskowitz*, 559 F.3d at 744; *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004)); *see also, e.g., Cruz Madera v. Saul*, No. 19-01320-FDS, 2021 WL 9100419, at *13 (D.P.R. Feb. 26, 2021) ("Here, Cruz Madera's counsel failed to inquire on the issue or to raise an objection to the VE's testimony at the hearing. Because the inconsistency was not identified during the hearing, the ALJ was not required to explain the conflict.") (citations omitted); *Murnahan v. Comm'r of Soc. Sec.*, Civ. No. 19-1348, 2020 WL 7024847, at *6 (N.D. Ohio Nov. 30, 2020) ("a claimant who fails to object at the hearing to the testimony of a VE waives the right to subsequently object to that testimony"); *Sullivan v. Colvin*, No. 13–12907–FDS, 2015 WL 1308695, at *13 (D. Mass. Mar. 24, 2015) ("In this case, there is no indication that plaintiff's attorney objected to the expert's testimony or identified the discrepancy at the oral hearing. Because the inconsistency was not identified

during the hearing, the ALJ was not required to explain the conflict."). As such, the Court is merely applying an established exhaust-or-forfeit rule, not creating a new one.

Nonetheless, relying primarily on *Sims* and *Carr*, Plaintiff highlights that the SSA's regulations and the underlying statute do not impose an exhaustion requirement. (Reply, ECF No. 10, at 6 (citations omitted)). As one court has explained, following the Supreme Court's holding in *Sims* that social security claimants do not have to exhaust issues before the Appeals Council to obtain judicial review thereof, district courts nationwide initially struggled with whether claimants must exhaust *Appointments Clause* challenges at the administrative level. *Desotelle v. Kijakazi*, No. 20-CV-1283, 2022 WL 409184, at *7 (E.D. Wisc. Feb. 10, 2022). In *Carr*, the high court answered this question, declining to impose such a requirement "[*i*]*n the specific context* of petitioners' Appointments Clause challenges," while nonetheless acknowledging that in other cases, "'such as in the sphere of routine objections to individual benefits determinations, the scales might tip differently.'" *Desotelle*, 2022 WL 409184, at *7 (quoting *Carr*, 141 S. Ct. at 1360) (alterations and emphasis in *Desotelle*). As set forth in the preceding paragraph, however, both before and after *Carr*, federal courts have continued to require exhaustion in other contexts, including when a claimant takes issue with a VE's testimony.[7] *See also Leisgang v. Kijakazi*, No. 21-cv-40-bbc, 2022 WL 970151, at *10 (W.D.

---

[7] This exhaustion requirement "is admittedly court imposed," although no less valid for that reason. *Cf. Plante v. Astrue*, No. 06-CV-0972, 2009 WL 1951411, at *8 n.14 (N.D.N.Y. May 19, 2009) (noting, as Plaintiff does here, that in *Sims* the Supreme Court observed that "neither the Social Security Act nor the Commissioner's regulations *require* exhaustion," but nonetheless finding objection not raised at hearing forfeited) (emphasis added), *report and recommendation adopted in part, rejected in part by* 2009 WL 1951352, at *3 (N.D.N.Y. July 2, 2009) (finding that claimant did not forfeit his objection regarding the VE because, unlike in this case, he asserted it in his request for review before the Appeals Council); *cf. also Sims*, 530 U.S. at 108 (acknowledging that "it is true that we have imposed an issue-exhaustion requirement even in the absence of a statute or regulation," although declining to do so on the facts before it).

11

Wisc. Mar. 31, 2022) (rejecting the contention that *Carr* holds "that social security disability claimants need not raise an issue before the ALJ to preserve it" and finding that claimant who failed to challenge the VE's testimony at the hearing forfeited his right to do so upon judicial review); *Desotelle*, 2022 WL 409184, at *7 ("Desotelle reads *Carr* much, much too broadly."), *aff'd*, No. 22-1602, 2023 WL 4146246, at *4 (7th Cir. June 23, 2023) ("when the claimant does not put the [VE's] methodology at issue and the vocational expert's testimony is otherwise uncontradicted, the ALJ is entitled to credit the vocational expert's testimony.").

Again invoking *Sims* and its progeny, Plaintiff next argues that even if an exhaustion rule exists, it would not apply in this case because the record contains no written notice advising him of it. (Pl.'s Br., ECF No. 10, at 7 (citing Justice O'Connor's concurrence in *Sims* for the proposition that the SSA must "affirmatively notif[y]" the claimant of such a rule's existence); *id.* at 8 (describing the forfeiture rule as "unannounced")). But there is no indication in any of the opinions cited above that the record contained written notice from the SSA of Plaintiff's need to object at the hearing to the VE's testimony to preserve the issue for judicial review, yet those cases required exhaustion. Because this requirement is the product of caselaw, not a creation of the SSA, *Plante*, 2009 WL 1951411, at *8 n.14, Plaintiff, through his counsel, was on notice of it through the existence of the aforementioned cases (and many others), including several from within this circuit. Moreover, Justice O'Connor's concurrence in *Sims* does not speak directly to the issue before this Court, inasmuch as that case involved a failure to raise an issue on administrative appeal to the Appeals Council, not at the hearing before the ALJ. *See* 530 U.S. at 113 ("Requiring issue exhaustion is particularly inappropriate here, where the regulation and procedures of the Social Security Administration [ ] affirmatively suggest that specific issues need not be raised before the Appeals Council.")

Plaintiff continues that no exhaustion requirement should apply because the SSA's

administrative review process is "informal," as set forth in its own regulations and rulings and by the ALJ at the outset of the hearing. (Reply, ECF No. 10, at 8). The nature of social security proceedings was also explored in *Sims*, and their informality was part of the reason that the Court declined to impose a forfeiture rule, at least where the potential forfeiture arose from the failure to raise the underlying issue before the Appeals Council (given the SSA's regulatory framework suggesting that doing so is unnecessary). 530 U.S. at 109-13. However, as the cases cited herein make clear, even following the Supreme Court's *Sims* decision in 2000, courts across the country have continued to apply such a rule where a social security claimant fails to object to a VE's testimony during the administrative hearing, notwithstanding its admittedly "informal" nature.

Plaintiff's final two arguments are that application of an exhaustion or forfeiture rule would improperly shift the step five burden of proof from the SSA to Plaintiff and that he could not have known of the ALJ's findings until receiving written notice of them months after the hearing. (Reply, ECF No. 10, at 8). This first argument remains unexplained. This Court fails to see how requiring a claimant to object at the administrative hearing to allegedly conflicting testimony from the VE, giving the ALJ the opportunity to explore and potentially resolve any conflict at that proceeding – as courts nationwide have done for at least the past decade or more – impermissibly shifts any burden to Plaintiff. Furthermore, Plaintiff's second argument here is a red herring because he did not need to await the ALJ's final decision to be aware, through counsel, of any conflict between the VE's testimony and the DOT. Rather, the necessary information was available to him at the time of the hearing when the VE testified that he could perform the duties of the identified positions as set forth in the DOT, notwithstanding his RFC restriction to simple tasks. (*See* R. 57; *see also* DOT 209.567-014, DOT 669.687-014, 713.684-038).

For the foregoing reasons, the Court finds that Plaintiff has forfeited his challenge to the

alleged conflict in the VE's testimony.[8]  Accordingly, his request for review is denied.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**.  An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

---

[8]  Insisting that the occupations proffered by the VE and endorsed by the ALJ "were impossible" for him to perform, Plaintiff also casts his claim as a failure by the ALJ to identify a significant number of jobs available to him in light of his RFC.  (Reply, ECF No. 8, at 2). According to Plaintiff, if in light of its DOT definition he were unable to perform the order clerk position, in particular, the remaining available jobs would be insufficient to justify a finding of not disabled.  (*Id.* at 7).  However, with Plaintiff's forfeiture of his objection regarding his suitability for this position, any suggestion that the ALJ failed to identify a sufficient number of jobs available to him in the national economy melts away.  (*See* R. 57 (40,000 food and beverage clerk positions available in the national economy); *see also Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (although "no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act" exists, 20,000 would suffice) (citing 20 C.F.R. § 404.1566; *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997))); *Johnson*, 108 F.3d at 180 (10,000 jobs nationally was sufficient).